UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
TIMOTHY POWERS,

                Plaintiff,

   -against-

ROMAN CATHOLIC DIOCESE OF ROCKVILLE
CENTRE, ST. MARTIN OF TOURS CHURCH and
ROBERT GUGLIELMONE,

                Defendants.
---------------------------------------------------------------------x

**REPORT & RECOMMENDATION**
19-CV-4738 (MKB) (SMG)

STEVEN M. GOLD, U.S. Magistrate Judge:

## INTRODUCTION

Defendant Robert Guglielmone removed this action from New York Supreme Court, Nassau County, to this Court by notice of removal filed on August 16, 2019. Not. of Removal ¶ 1, Dkt. 1. On April 17, 2020, plaintiff Timothy Powers moved to remand. Not. of Mot. to Remand, Dkt. 29. The Honorable Margo K. Brodie then referred plaintiff's motion to me for report and recommendation. Order dated Apr. 23, 2020. For the reasons described below, I respectfully recommend that plaintiff's motion to remand be granted.

## BACKGROUND

On August 14, 2019, plaintiff commenced this action in Supreme Court, Nassau County, asserting claims for negligence, negligent hiring, retention and supervision, and negligent infliction of emotional distress against defendants Roman Catholic Diocese of Rockville Centre ("the Diocese") and St. Martin of Tours Church ("the Church") and claims for assault and battery against defendant Robert Guglielmone ("defendant"). Compl. ¶¶ 25–86, Dkt. 29-4. On August 16, 2019, defendant removed the case to this Court, invoking federal diversity jurisdiction. Not.

of Removal ¶ 5. Specifically, the notice of removal provided that "[p]laintiff is a resident of Chonburi Province, Thailand," defendant is "a citizen and a resident of South Carolina," and the Diocese and the Church are both "incorporated in the State of New York." *Id.* ¶ 6. Defendant answered on October 29, 2019 and the Church answered on November 13, 2019. Def.'s Answer, Dkt. 10; Church's Answer, Dkt 11. The Diocese has not filed an answer.

On December 12, 2019, defendant submitted a letter pointing out that, while plaintiff claims to be a resident of Thailand, he was a long-time resident of Colorado before he moved abroad. Ltr. dated Dec. 12, 2019 at 1, Dkt. 12. Acknowledging that "diversity jurisdiction is absent where a United States citizen has a foreign domicile," defendant moved for "limited jurisdictional discovery to allow the parties to investigate whether [plaintiff] intends to return to the United States." *Id*. at 1, 2. The initial conference in the case was held the next day, during which I ruled that "[d]efendants may conduct a video deposition of plaintiff, limited in time to twenty minutes in length assuming plaintiff is responsive, and limited in subject matter to plaintiff's domicile for purposes of diversity jurisdiction." Min. Entry dated Dec. 13, 2019, Dkt. 17. Moreover, I directed "[t]he parties [to] file either a stipulation of remand to state court or a status report indicating how they intend to proceed by January 20, 2020." *Id.*

The parties declined to stipulate to remand and, on April 17, 2020, plaintiff moved to remand the case. Not. of Mot. to Remand, Dkt. 29; Mem. of Law in Supp. of Pl.'s Mot. to Remand ("Pl.'s Mem. of Law"), Dkt. 29-1. In support of the motion, plaintiff submitted an affidavit stating that he has resided in Thailand with his wife and two daughters since he moved there in 2015 and has not returned to the United States at all during that time. Aff. of Timothy Powers ("Powers Aff.") ¶¶ 1, 4, Dkt. 29-5. He also submitted the transcript of his video deposition, in which he testified, among other things, that he owns two condominiums in

2

Thailand, Tr. of Pl.'s Jurisdictional Dep. at 11:17-23, 17:11-14, Dkt. 29-6, has a driver's license in Thailand, *id.* at 16:20-22, and uses a local bank account at the Bank of Bangkok, *id.* at 20:2-6.

In opposition, defendant asserts that, because it is undisputed that plaintiff's initial domicile was in Colorado, plaintiff now bears the burden to prove by clear and convincing evidence that he changed his domicile from Colorado to Thailand. Mem. of Law in Opp. to Pl.'s Application to Remand ("Def.'s Mem. of Law") at 5, Dkt. 28 (citing *Finnegan v. Long Island Power Auth.*, 409 F. Supp. 3d 91, 97 (E.D.N.Y. 2019) ("[T]he party asserting diversity jurisdiction must first establish his domicile and only then does the challenger assume the burden of proving that there has been a change in that situation.")). Defendant argues that plaintiff has not met this burden because plaintiff's "only 'evidence' is his affidavit," as he "produced no documentary evidence at all—and never has." Def.'s Mem. of Law at 10. Defendant goes on to argue that "[p]laintiff's own history of behavior[] place[s] his credibility squarely [at] issue," *id.,* a reference to plaintiff's criminal record. Criminal Record, Dkt. 28-3.

Plaintiff filed a reply, Mem. of Law in Reply ("Reply Mem."), Dkt. 30, and submitted the following documentary evidence: (1) plaintiff's marriage certificate, Dkt. 30-4, (2) deeds to the two condominiums, Dkt. 30-5, (3) plaintiff's Thai driver's license, Dkt. 30-6, (4) plaintiff's bank account passbook and statements, Dkt. 30-7, (5) plaintiff's criminal record, Dkt. 30-8, and (6) the "visas" pages of plaintiff's passport, Dkt. 30-9. Plaintiff argues that "the specific facts and evidence of this case clearly and convincingly demonstrate that [diversity] jurisdiction cannot exist under any circumstances." Reply Mem. at 1.

3

## DISCUSSION

The parties do not dispute the respective domiciles of defendant, the Diocese, and the Church, or that plaintiff is a citizen of the United States and not of any other country. Pl.'s Mem. of Law at 2; Def.'s Mem. of Law at 2; Not. of Removal ¶ 6. They therefore agree that this case does not involve "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). Defendant contends that this is a case between "citizens of different States," and that this Court therefore has diversity jurisdiction. *Id.* § 1332(a)(1). Plaintiff argues that he is not a citizen of a state but rather an American citizen who is domiciled abroad, and that this Court therefore lacks diversity jurisdiction. *See Foroughi v. Am. Airlines, Inc.*, 2011 WL 5979716, at *2 (S.D.N.Y. Nov. 30, 2011) ("United States citizens domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state such that 28 U.S.C. § 1332 does not provide the federal courts jurisdiction over a suit to which such persons are parties" (internal quotation marks and citation omitted)).

District courts have diversity jurisdiction where, assuming the requisite amount in controversy, the suit is between "citizens of different States." 28 U.S.C. § 1332(a)(1).[1] Complete diversity of citizenship is required; "[t]hat is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis in original); *see also St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005). Moreover, "diversity must exist at the time the action is commenced." *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002).

For the purposes of diversity jurisdiction, an individual's citizenship "depends on his [or

---

[1] It is undisputed in this case that the amount in controversy exceeds $75,000.

4

her] domicile." *Davis v. Cannick*, 691 F. App'x 673, 673 (2d Cir. 2017) (internal quotation marks and citation omitted). "Domicile is the place where a person has his [or her] true fixed home and principal establishment, and to which, whenever he [or she] is absent, he [or she] has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). "Consequently, residence alone is not determinative of domicile or citizenship." *White v. Abney*, 2019 WL 1298452, at *3 (E.D.N.Y. Mar. 21, 2019) (citing *Caren v. Collins*, 689 F. App'x 75, 75 (2d Cir. 2017)).

"One acquires a 'domicile of origin' at birth, which continues until a change in domicile occurs." *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) (quoting *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)). "A person changes their domicile only when they take up residence in a new domicile and intend to stay." *Lever v. Lyons*, 2018 WL 1089328, at *5 (E.D.N.Y. Feb. 26, 2018). To determine whether a party has established a physical presence and intent to stay, "[c]ourts have looked at many factors[,] including voting registration, driver's license registration, location of property, location of bank accounts, place of employment, and payment of taxes[.]" *Chevalier v. USA Exp. Moving & Storage Inc.*, 2004 WL 1207874, at *2 (S.D.N.Y. June 2, 2004); *see also Pierre v. Jack Cooper Transp. Co.*, 2012 WL 6212845, at *1 (E.D.N.Y. Dec. 13, 2012); *Scotto v. Derani*, 2010 WL 3394390, at *1–*2 (E.D.N.Y. July 28, 2010), *report and recommendation adopted*, 2010 WL 3394394 (E.D.N.Y. Aug. 23, 2010). "A totality of the evidence approach is called for, and no single factor is conclusive, although the residence of a married person's spouse and children (if the couple has not separated) is given considerable weight." *Korb v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2006 WL 300477, at *1 (S.D.N.Y. Feb. 7, 2006) (internal quotation marks and citation omitted); *see also Nat'l Artists Mgmt. Co., Inc. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y.

5

1991).

It is well-settled that "[t]he party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Advani Enters. Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998). "The party asserting subject matter jurisdiction . . . bears the burden of showing a factual basis for jurisdiction by a preponderance of the evidence." *Finnegan*, 409 F. Supp. 3d at 97 (internal quotation marks and citation omitted). "When challenged on allegations of jurisdictional facts, the part[y] must support [his or her] allegations by competent proof." *Id.* (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010)). This rule suggests that defendant has the burden of proving that plaintiff's domicile is in Colorado.

On the other hand, a party claiming that there has been a change in his or her domicile bears the burden of proving the requisite "'intent to give up the old and take up the new [domicile], coupled with an actual acquisition of a residence in the new locality,' and must prove those facts 'by clear and convincing evidence.'" *Palazzo*, 232 F.3d at 42 (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243–44 (2d Cir. 1984)). Given that plaintiff lived in Colorado from 1986 to 2015 and has lived in Thailand from 2015 to present, Tr. of Jurisdictional Dep. 6:24–7:2, 11:10-13, this rule suggests that plaintiff has the burden of proving that he gave up his domicile in Colorado and acquired Thailand as his new domicile.

"The potential conflict between these two rules in a case such as this—that is, where 'the allegation of diversity relies on [an] old domicile[ ] and the denial of diversity relies on [a] change[ ] in domicile'—has been resolved by the Second Circuit." *Pacho v. Enter. Rent-A-Car*, 510 F. Supp. 2d 331, 335 (S.D.N.Y. 2007) (quoting *Herrick Co., Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 323 (2d Cir. 2001). Indeed, the Second Circuit has explained that, where the

6

evidentiary burden requirements "cut in opposite directions," the party "seeking to challenge diversity by alleging a change of domicile does not . . . bear the burden of proving that change if the party seeking to establish diversity has not carried its (prior) burden of establishing a specific initial domicile from which the change would be a departure." *Herrick Co.*, 251 F.3d at 323, 324. "In other words, the party asserting diversity jurisdiction must first establish [the] domicile and only then does the challenger assume the burden of proving that there has been a change in that situation." *Finnegan*, 409 F. Supp. 3d at 97. The Second Circuit, however, did not note the applicability of the clear-and-convincing standard in its articulation of this burden-shifting framework.

Here, the parties do not dispute that plaintiff was domiciled in Colorado prior to moving to Thailand in 2015.[2] Tr. of Jurisdictional Dep. 6:24–7:6 ("Q: So you lived in Colorado the state from 1986 until 2015? A: Correct. Q: And when you were living there, you intended to stay there during that time until you left? A: Yeah."); Def.'s Mem. of Law at 5. Accordingly, the burden now rests with plaintiff to show that he has changed his domicile to Thailand.

Plaintiff has presented substantial evidence demonstrating that he is now domiciled in Thailand and was domiciled there when this action was commenced in August 2019. In his affidavit submitted in support of his remand motion, plaintiff avers that he has lived in Thailand with his wife and two daughters since 2015, Powers Aff. ¶ 1, and that he "intend[s] on remaining in Thailand and being domiciled [there] for the remainder of [his] life," *id.* ¶ 6. Additionally, plaintiff states that he has not returned to the United States at all since 2015 "nor do[es he] ever

---

[2] Plaintiff lived in New York from 1969 to 1979 and in California from 1980 to 1986. Tr. of Jurisdictional Dep. at 10:6-21. He then lived in Colorado from 1986 to 2015, with a period of 1½ years living in Pennsylvania in the early 2000s. *Id.* at 6:24–7:2; 11:2-4. Neither party alleges that plaintiff's domicile is in New York, California, or Pennsylvania.

7

intend on returning to reside and/or have [his] domicile in the United States," *id.* ¶ 4, and has "only left [Thailand] once, when [he] went to Laos for one day to convert [his] educational (ED) visa to a marriage visa," *id.* ¶ 5.

Plaintiff has also submitted the transcript of his deposition, in which he testified that he lived in Colorado from 1986 until November 2015, when he moved to Thailand. Tr. of Pl.'s Jurisdictional Dep. at 6:24–7:2, 11:10-13. He further testified that he owns two condominiums in Thailand—one that is his primary residence and another that is an investment property. *Id.* at 11:17-23; 17:11-20. Additionally, according to the transcript, plaintiff has a driver's license in Thailand, *id.* at 16:20-22, he and his wife own a car, motorcycle, and/or scooter, *id.* at 25:25–26:5, and he has a Thai phone number and uses a cellular phone service that is offered in Thailand, *id.* at 20:16–21:5. He also uses "a local bank account . . . at the Bank of Bangkok," *id.* at 20:2-6, and no longer has a bank account at Compass Bank, which he used while he lived in Colorado but closed it in 2015, the year he moved to Thailand, *id.* at 5:10-24. Finally, he testified that, although he is not a member of any religious institutions, fraternal organizations, or clubs, he supports the Veterans of Foreign Wars ("VFW"), and noted that his friends are "expats [who] are retired military" in Thailand. *Id.* at 22:3-21.

In further support of his motion to remand, plaintiff provides as part of his reply various documents corroborating the statements in his affidavit and deposition testimony. These documents include his marriage certificate, the deeds to his two condominiums, his driver's license, his bank account passbook and statements, and the "visas" page of his passport. Reply Exs. C, D, E, F, and H, Dkts. 30-4, 30-5, 30-6, 30-7, and 30-9.[3] Although defendant argues that evidence submitted for the first time in reply should not be considered by the Court, Def.'s Mem.

---

[3] Several of the documents appear to be written in a foreign language and some are illegible. However, defendant does not contest their authenticity or plaintiff's description of what they are.

8

of Law at 11–12, I conclude that plaintiff properly submitted this evidence to rebut defendant's attack on his credibility, which included the submission of plaintiff's criminal record to the Court. *See, e.g.*, *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000) ("[R]eply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." (internal quotation marks and citation omitted)).

In any event, as plaintiff points out, I have broad discretion to consider evidence submitted with the reply where the record shows that defendant could not be surprised by the evidence. *See* C*ompania Del Bajo Caroni (Caromin), C.A. v. Bolivarian Republic of Venezuela*, 341 F. App'x 722, 724 (2d Cir. 2009) ("A district court enjoys broad discretion . . . to rely on evidence submitted with the reply papers[.]"); *Cifarelli v. Village of Babylon*, 93 F.3d 47, 53 (2d Cir. 1996) (holding that district court properly relied on evidence submitted with defendants' reply, where record showed that plaintiff "was fully aware prior to the defendants' reply" of the issue to which evidence pertained). Here, because plaintiff testified at his deposition about his marriage, condominiums, driver's license, bank accounts, and various travel visas, defendant cannot credibly claim to have been surprised by any of the documentary evidence plaintiff submitted as part of his reply. Indeed, if defendant were truly surprised by this evidence, it seems likely he would have moved for leave to submit a sur-reply or continue plaintiff's deposition, but he did neither. Accordingly, I now turn to the substantive merits of plaintiff's remand motion with these documents in mind.

First, as noted above, courts considering the domicile of a married individual give "considerable weight" to the residence of the individual's spouse and children. *Korb*, 2006 WL 300477, at *1. Plaintiff asserts that he lives in Thailand with his wife and two daughters, and

9

defendant apparently does not dispute that assertion.

Second, plaintiff heavily relies by analogy to the additional circumstances relied on in *Morton v. Citibank, N.A.*, 2019 WL 3066412 (S.D.N.Y. July 12, 2019), where the court granted plaintiff's motion to remand after finding that he had "established by clear and convincing evidence that he [wa]s a foreign domiciliary" and therefore diversity jurisdiction was lacking. *Morton*, 2019 WL 3066412, at *5. In making this determination, the court considered plaintiff's sworn declaration, with corresponding documentary evidence, stating that (1) he had continuously lived in Japan since May 2015, (2) he intended to remain in Japan, (3) he visited the United States only four times—for one week each—since his move, (4) he lived in an apartment with his wife in Tokyo, (5) he was securing a loan to purchase a house in Tokyo, (6) he earned all of his income in Japan, and (7) he maintained no residence in the United States. *See id.* at *3. Although the defendant had submitted evidence that plaintiff, among other things, still maintained a law firm in the United States and had a Florida driver's license, the court held that the evidence did not contradict plaintiff's representations because the driver's license, for example, was issued years before plaintiff had moved to Japan, and there was no indication that plaintiff was still personally involved in the law firm. *See id.* at *4.

Similarly, here, defendant has failed to submit any evidence that contradicts the representations made by plaintiff in his sworn affidavit and deposition. Rather, defendant merely points to plaintiff's criminal record; that record, however, has little bearing on any of the facts in dispute here, particularly because it indicates that plaintiff's criminal history ended over a decade ago and several years before plaintiff contends he relocated his domicile to Thailand. Criminal Record at 5. In his opposition memorandum of law, defendant emphasizes that plaintiff "lived in Colorado for [28] years—from 1986 to 2015" and that this is "a longer connection to any one

10

place th[an] [plaintiff] has ever had, dwarfing his connection to his present residence by more than six times." Def.'s Mem. of Law at 2. However, as plaintiff points out, the fact that plaintiff lived in Colorado for a much longer period of time than he has in Thailand is irrelevant to the determination of domicile, which, as stated above, involves the analysis of an individual's physical presence in a particular place and an intent to remain there. *See* Reply Mem. at 3.

Defendant also emphasizes that plaintiff testified that he moved to Thailand on a *temporary visa* and still has a temporary visa, *see* Tr. of Pl.'s Jurisdictional Dep. at 12:10-23, 13:4-12, does not work or pay taxes in Thailand, *see id.* at 15:17-18, 21:18-23, and is not a member of any religious institutions, organizations, or clubs in Thailand, *see id.* at 22:3-16; Def.'s Mem. of Law at 2, 6–7. Moreover, defendant focuses on plaintiff's use of a local bank account in Thailand but *only through* a principal account that he maintains with Charles Schwab, a U.S.-based bank that has no branches in Thailand. *See* Tr. of Pl.'s Jurisdictional Dep. at 18:15-17, 19:22-25, 20:2-11; Def.'s Mem. of Law at 8. In order to obtain funds from Charles Schwab, plaintiff must "type up a letter" to request a wire transfer and then "send them a photo of the letter signed with [his] passport." Tr. of Pl.'s Jurisdictional Dep. at 20:8-11.

Defendant's contentions are unpersuasive. First, with respect to plaintiff having only a temporary visa, plaintiff testified, under penalty of perjury, that he is not able to obtain a permanent visa, *id.* at 14:7-14, 15:5-6, and that he has "spoken to [his] lawyers" about the issue, *id.* at 15:8-10. He also testified that "[t]here is no path to citizenship for [him] at all," *id.* at 14:9-10, and that instead he must renew his marriage visa annually and has done so since he first obtained the visa, *id.* at 13:9-14. Under these circumstances, the fact that plaintiff has not obtained a permanent visa does not suggest that he intends to leave Thailand and return to the United States to live. Defendant directs the Court's attention to the reference to permanent

11

residents in 28 U.S.C. § 1332(a)(2), Def.'s Mem. of Law at 6–7, but the express language of that statute does not apply to American citizens domiciled abroad, and defendant does not to point to any precedent applying the statute to such persons.

Next, plaintiff has explained that, although he does not work in Thailand, nor does he work elsewhere, he lives off his savings and has a "second rental investment condo" in Thailand. *Id.* at 15:22–16:3, 17:13-14; *see* Pl.'s Mem. at 8 ("[Plaintiff] owns a separate condo that he rents out and takes in revenue from."). Although defendant questions plaintiff's credibility in this regard, he points to no evidence that calls the truthfulness of plaintiff's testimony into question. As for defendant's emphasis on the fact that plaintiff does not pay taxes in Thailand, plaintiff explained during his deposition that he does not make such payments because he does not have income and therefore does not meet the requisite "threshold." Tr. of Pl.'s Jurisdictional Dep. at 21:6-23. Finally, as for the Charles Schwab account, plaintiff has explained that the account is "virtual," *id.* at 5:5, and that he opened the account "literally days before [he] moved [to Thailand]," *id.* at 18:21-23. He further clarified in his reply that he only accesses the Charles Schwab account "once a year" to transfer money to his account at the Bank of Bangkok and that, after making this transfer, "he solely utilizes his local Bank of Bangkok branch in Thailand to pay for his living expenses." Reply Mem. at 5.

It is not entirely clear whether "the clear-and-convincing standard attaches in the context of a case where the party asserting a change in domicile is the *opponent*, rather than the proponent, of federal jurisdiction." *Morton*, 2019 WL 3066412, at *4. Even assuming this exacting burden applies, though, plaintiff has met it. Indeed, because plaintiff's affidavit and deposition testimony are supported by the documentary evidence attached to his reply papers and have not been contradicted by any evidence presented by defendant, these documents are entitled

12

to strong evidentiary weight. *See id.*; *see also Chevalier*, 2004 WL 1207874, at *2 ("[A] sworn statement regarding citizenship will be a strong factor in favor of a similar judicial finding, . . . but if those statements conflict with other facts that disclose a contrary intent, they will be given little weight." (internal quotation marks and citation omitted)).

In short, I conclude that plaintiff has established by clear and convincing evidence that he is a foreign domiciliary and not a citizen of any state. Because the parties are not "citizens of different States," 28 U.S.C. § 1332(a)(1), and federal question jurisdiction does not apply, this Court lacks subject matter jurisdiction. I therefore respectfully recommend that this case be remanded to state court.

## CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiff's motion for remand be granted. Any objections to the recommendations made in this Report must be made within fourteen days after filing of this Report and, in any event, on or before September 23, 2020. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).

/s/
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
September 9, 2020

U:\#JAV 2019-2020\Powers v. Roman Catholic Diocese of Rockville Centre, 19-CV-4738\Final R&R.doc